María Ríos Méndez, demandante y apelada, *v.* Mario Juliá demandado y apelante.

No. 6319.—*Sometido:* Febrero 1, 1935. *Resuelto:* Enero 30, 1936.

M. Acosta Velarde, abogado del apelante; R. Rivera Zayas, abogado de la apelada.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Cuando a la terminación de un contrato de arrendamiento el arrendador acumula una acción para recobrar el importe de los cánones con otra de daños y perjuicios provenientes del estado deteriorado de la finca, no existe una indebida acumulación, toda vez que ambas acciones tuvieron su origen en el mismo contrato. Artículo 104, inciso 8, Código de Enjuiciamiento Civil.

No se hizo un señalamiento de error suficiente respecto a la alegación de que la demanda era ambigua y dudosa, y a que los hechos no fueron aducidos suficientemente en una u otra causa de acción. Así, pues, nos conformaremos con decir que el demandado fué bastante bien informado de la naturaleza de las reclamaciones presentadas en su contra. Más especialmente la primera causa de acción fué transigida por convenio entre las partes.

■ El segundo señalamiento se refería a la admisión por parte de la corte de varias facturas de comerciantes y artesanos tendentes a demostrar la suma que la demandante había pagado al tratar de restituir la finca al estado en que en su opinión la misma se hallaba al ser cedida en arrendamiento al demandado. La demandante declaró sobre el estado cambiado de la finca y se ofrecieron las cuentas en su totalidad como prueba. No se separaron los daños ocasionados a la propiedad con motivo de las distintas causas pero la corte estuvo justificada al admitir dichas facturas para darles el valor probatorio que tuvieran al llegar a la conclusión final. En realidad la opinión de la corte de distrito demuestra que del importe total de estas cuentas ella hizo varias deducciones debido al hecho de que gran parte de los cargos no surgieron por culpa del inquilino. Convenimos con la apelada en que las objeciones se dirigían únicamente al peso de la prueba. De todos modos, dada la actuación de la corte, la admisión de estos documentos fué inofensiva.

■ El tercer señalamiento es extraordinario. Las partes celebraron un contrato de arrendamiento específico por determinado período de tiempo a razón de $175 mensuales. Entonces convinieron en un arrendamiento de mes a mes a razón de $200. El apelante insiste en que la corte cometió error al decir que de conformidad con los términos del contrato él estaba obligado a devolver la propiedad en el mismo buen estado de conservación en que la recibiera a la fecha del arrendamiento, o sea el 5 de enero de 1927.

Creemos que la prueba demuestra bastante bien que ori-

ginalmente, por el contrato y por su prórroga, el apelante tenía la obligación de devolver el edificio en el mismo estado de conservación en que se hallaba, con las excepciones provistas por la ley. Además, la apelada no reclamaba nada más de lo que le hubiera concedido el Código Civil.

Los señalamientos cuarto, quinto y sexto pueden ser tratados conjuntamente. En el tiempo que medió entre la fecha del arrendamiento y la entrega de la finca por el arrendatario, azotó la isla el ciclón de San Felipe el 13 de septiembre de 1928. La demandante admitió en la silla de los testigos que la finca fué seriamente perjudicada por éste. En realidad dijo que de sus diversas propiedades ésta fué la más afectada. La corte inferior hizo varias deducciones por razón del huracán, y la duda principal que tenemos es si se dedujo lo suficiente.

La propiedad era originalmente una casa de vivienda. La demandante dice que el entendido fué que el Dr. Juliá no utilizaría la finca como clínica. No obstante, la prueba tiende a demostrar que la casa era utilizada con tal fin, y más o menos con conocimiento y asentimiento de la apelada. La demandante ocupó la silla testifical y prestó declaración al efecto de que la casa se había deteriorado bastante.

Es una presunción razonable que la casa fué entregada al apelante en buen estado. Cuando se convierte una casa residencial en una clínica, hay que hacer necesariamente cambios drásticos en ella, y si la demandante, según declaró, encontró la casa en un estado de deterioro, conforme demuestra el primer examen hecho por el ingeniero dentro de los diez días de su entrega, la corte estuvo justificada al llegar a la conclusión de que el deterioro se debió, por lo menos en parte, a la manera en que fué tratada por el arrendatario.

Conforme hemos dicho, la corte trató de excluir todos los daños debidos al ciclón. El apelante insiste en que la demandante no demostró que ninguna parte del deterioro se debió directamente a actos suyos.

El apelante también insiste enfáticamente en que una

buena parte de los daños y perjuicios pueden haber surgido éntre el período que la casa fué entregada y el momento en que la apelada se hizo cargo activamente de la misma. La finca fué entregada por el Dr. Juliá y notificada la dueña el 20 de octubre de 1928. La correspondencia y la prueba en este caso nos convencen de que antes del primero de noviembre de 1928 la apelada hizo que la casa fuera examinada por el ingeniero Tallada Ríos; que como consecuencia de este examen, o independientemente del mismo, el Dr. Juliá hizo ciertas reparaciones a la casa, creyendo evidentemente que era su deber hacerlo así. Es una inferencia lógica que el ingeniero o los agentes del Dr. Juliá estuvieron a cargo de la casa por un corto período de tiempo luego de haber sido ésta entregada a la apelada. Posiblemente transcurrió un intervalo de varios días en que nadie estaba a cargo de la propiedad, pero no hay presunción alguna a ese efecto. Por el contrario, podría esperarse normalmente que una casa no sufrirá cambio alguno por lo menos dentro de una semana o cosa así, después de haber sido abandonada. El principio enunciado en el inciso 31 del artículo 102 de la Ley de Evidencia parecería ser aplicable, a saber:

"Que una vez probada la existencia de una cosa, continúa ésta todo el tiempo que ordinariamente duran las cosas de igual naturaleza."

No hay duda de que las reparaciones del Dr. Juliá fueron hechas entre el primero y el quince de noviembre de 1928, y que así él se lo informó a la apelada por carta fechada noviembre 15 del referido año. Igualmente, la corte tenía derecho a creer por la prueba que el primer examen del ingeniero fué practicado antes del primero de noviembre de 1928. Durante el juicio el apelante mismo ofreció como prueba el informe practicado por el mencionado ingeniero. El apelante no nos convence de que, considerado este informe, la corte no tuviera derecho a creer que los daños de referencia no fueran resultado del abandono de la casa.

La demandante reclamaba la suma de $1,615.68 por con-

cepto de daños y perjuicios. La corte inferior dijo en su opinión que las sumas pagadas por los daños ocasionados por el ciclón y algunos otros, debían ser rebajadas. La corte manifestó:

"De la evidencia documental y testifical resulta que la demandante invirtió en materiales y mano de obra en la reparación y arreglo de la casa, la suma de $1,370.00. De esta suma debe rebajarse: $107.00 pagados a S. Albanese e Hijo, Sucrs., por las tejas; $67.50 pagados a Porto Rico Gas & Coke Co., por una cocina; $106.00 por el trabajo de pintura exterior e interior, pagado a Crisóstomo González y José Ramírez, considerando el estimado de Ramón Soler (Dte. Exh. No. 3) que fué sólo de $68.00, en relación con el memorándum del contratista Tallada Ríos; $200.00 de la cantidad pagada a Daniel García por trabajos de carpintería, por estar incluídos en ellos la reparación de la torre, o sea la colocación de las tejas, un pivot para enredaderas, marquesina a la puerta de entrada, división de cristales y madera y arreglo general del balcón, que el demandado no debe pagar; y $10.25 importe de cristales florentino comprados á A. Pérez y Hnos. Sucrs.; $5.04 de la cuenta de Rolán y Tejedor, por alambre y zinc, cuyo uso no se ha demostrado; y $46.00 de la cuenta de Sucrs. de A. Mayol & Co., importe de un inodoro y un fregadero, habida consideración que del servicio sólo faltó una ducha y un inodoro, que está ya cargado en la cuenta por $15.00. Total de deducciones, $539.79.

"En resumen, considerando el memorándum del Ingeniero Tallada Ríos, presentado por el propio demandado, quien examinó la propiedad en Octubre y Noviembre, 1928, a instancias de la demandante, y estimó los daños no reparados en $1,300.00, en relación con la declaración del Ingeniero Eduardo Fossas, quien tambén la examinó en el mes de noviembre, 1928, a solicitud del demandado; y por el resultado de toda la evidencia, una suma de $840.21 que es la diferencia entre los gastos y las deducciones, está justificada, para dejar la finca en el buen estado de conservación y uso en que se encontraba cuando la recibió el demandado, el 5 de enero de 1927, excluyéndose los daños causados por el temporal y abandono de la propiedad desde el 20 de octubre, 1928, en que fué devuelta."

El apelante señala como error el que la corte descansara tan definitivamente en el informe del ingeniero. No damos gran peso al hecho de que fué el mismo demandado quien presentó el documento o a que admitía los hechos en él con-

tenidos, mas del documento presentado, y del resto de la prueba, no había razón alguna por la cual la corte debía deducir de sus conclusiones daños y perjuicios debidos al supuesto abandono.

Ahora bien, la corte eliminó $106 por pintura, porque una de las cuentas presentadas era sólo por $68 y la demandante reclamaba una suma mayor. Es práctica tan general que un arrendador tenga que pintar una casa interior y exteriormente después de cierto número de años, que sin prueba más específica de daños causados por el demandado, a nuestro juicio todos los gastos incurridos en pintar la casa debieron ser rebajados. Algunos de éstos pudieron ser ocasionados por acción directa del huracán o por el agua que penetra en una casa a consecuencia del mismo.

Es un hecho admitido que la torre del edificio sufrió daños y perjuicios a causa del ciclón al igual que las *pergolas* exteriores. La reclamación por trabajo de carpintería ascendía a $400 y la corte dedujo $200. Sin embargo, no estamos convencidos de que los actos del demandado produjeran al demandante $200 de daños y perjuicios que exigieran trabajo de carpintería. Mas ascendían a algo. Tenemos dudas también respecto a si no debieron hacerse mayores rebajas. En gran parte, es cuestión de conjeturas, pero tomando los autos en su totalidad, a nuestro modo de ver, la indemnización de la demandante debe ser limitada a $500.

*La sentencia apelada debe ser por tanto modificada, y así modificada, confirmada.*